**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1592

ANDREWS & LAWRENCE PROFESSIONAL SERVICES, LLC,

Defendant and 3rd-Party Plaintiff – Appellant,

v.

ALEXA BERTINELLI; CIVIL JUSTICE, INC.; RICHARD SCOTT GORDON; GORDON, WOLF & CARNEY, CHTD.,

Third Party Defendants – Appellees.

No. 22-1658

TORIN KIRK ANDREWS; KARY B. LAWRENCE,

Defendants and 3rd-Party Plaintiffs – Appellants,

and

ANDREWS & LAWRENCE PROFESSIONAL SERVICES, LLC,

Defendant,

v.

ALEXA BERTINELLI; CIVIL JUSTICE, INC.; RICHARD SCOTT GORDON; GORDON, WOLF & CARNEY, CHTD.,

Third Party Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah Lynn Boardman, District Judge.  (8:21-cv-00028-DLB)

Submitted:  April 19, 2023                                                      Decided:  July 7, 2023

Before WYNN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ON BRIEF:**  Torin K. Andrews, COMMUNITY ASSOCIATION LEGAL SERVICES, LLC, Ijamsville, Maryland, for Appellants.   R. Scott Krause, LEWIS BRISBOIS BISGAARD & SMITH, LLP, Baltimore, Maryland, for Appellees Richard School Gordon and Gordon, Wolf & Garney, Chtd.   Mark G. Chalpin, Gaithersburg, Maryland, for Appellees Alexa Bertinelli and Civil Justice, Inc.

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Appellants Andrews & Lawrence Professional Services, LLC (ALPS), Torin Andrews, and Kary Lawrence, appeal the district court's order awarding Rule 11 sanctions against them. *See* Fed. R. Civ. P. 11. We affirm in part, vacate in part, and remand for further proceedings.

I.

This case originated in Maryland circuit court. Appellees Richard Gordon, an attorney with the law firm of Gordon, Wolf & Carney, Chtd., and Alexa Bertinelli, an attorney with Civil Justice Inc., filed class actions on behalf of several homeowners against their homeowners' associations and management companies (collectively, "the HOAs"), challenging the legality of promissory notes containing confessed judgment clauses ("CJPNs") used by the HOAs when resolving disputes with homeowners over unpaid HOA fees. ALPS, Andrews, and Lawrence, who were the collection attorneys for the HOAs, were included as defendants in the class actions given their role in drafting and executing the CJPNs. Because attorney fees are included in the total amount of the promissory note, the collection attorneys are also third-party beneficiaries under the CJPNs.

Generally speaking, the CJPNs provide that if a homeowner defaults on a payment agreement, defendants may enter judgment in the full amount due under the promissory note, plus costs and attorney fees, without notice or process given to the homeowner. The homeowners agreed to the CJPNs to avoid collection actions for unpaid HOA dues. However, while the case at bar was proceeding, the Maryland Court of Appeals held that Maryland's Consumer Protection Act prohibited the use of promissory notes containing

3

confessed judgments to collect delinquent HOA assessments. *See Goshen Run Homeowners Ass'n v. Cisneros*, 223 A.3d 917 (Md. 2020). The court explained that the legislature "has determined that the 'use of a contract related to a consumer transaction which contains a confessed judgment clause that waives a consumer's right to assert a legal defense to an action' constitutes an unfair, abusive, or deceptive trade practice and is therefore prohibited." *Id.* at 920 (quoting Md. Code Ann., Com. Law § 13-301(12) (2013)). The court concluded that the "[c]ollection of HOA assessments falls within the broad purview of the Consumer Protection Act, which *prohibits* the use of confessed judgment clauses for the collection of consumer debts." *Id.* (emphasis added).

On February 3, 2021, shortly after the defendants removed the action to federal court, plaintiffs filed a fifth amended complaint, asserting class action claims against the defendants and, *inter alia*, claims alleging violations of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f. Plaintiffs thereafter reached settlement agreements with the HOAs, which include a stipulation that the CJPNs are void and unenforceable. Defendants ALPS, Andrews, and Lawrence are the only remaining defendants, and they have represented themselves in this action.

On March 8, 2021, ALPS, Andrews, and Lawrence (hereinafter the "third-party plaintiffs") filed a third-party complaint against *counsel* for the plaintiffs, naming Gordon and his law firm, and Bertinelli and her employer, as the third-party defendants. Count I alleged that the third-party defendants engaged in a civil conspiracy to solicit clients to sue the third-party plaintiffs for their role in drafting and enforcing the CJPNs, in violation of

Maryland's criminal barratry statute. *See* Md. Code Ann., Bus. Occ. & Prof. § 10-604. Count II alleged that the third-party defendants intentionally and with malice interfered with the third-party plaintiffs' rights under the CJPNs by "forc[ing]" the HOAs, "through intimidation and coercion," to agree to voiding the promissory notes, thereby cancelling the third-party plaintiffs' rights as express beneficiaries of the settlement contracts. J.A. 339. The third-party claim included no factual allegations of particular conduct engaged in by the third-party defendants.

On April 21, 2021, the third-party defendants filed a joint motion for judgment on the pleadings as to the merits of the third-party complaint, *see* Fed. R. Civ. P. 12(c), and a motion for sanctions under Rule 11 for filing the third-party complaint. On March 1, 2022, the district court granted the motion for judgment on the pleadings.

The district court held that the intentional interference claim was wholly conclusory—unsupported by any specific factual allegations to support it. *See, e.g., Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (To state a claim for intentional interference with contractual or business relations, the plaintiff must show "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.") (cleaned up). The district court held that the civil conspiracy claim also failed because Maryland's barratry statute, which is a *criminal* statute, provides no private right to a cause of action and, therefore, cannot serve as the predicate for a civil conspiracy action. *See Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045

(Md. 1995) ("No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.") (cleaned up).  In the alternative, the district court held that, even if the criminal barratry statute could give rise to a civil conspiracy claim for tortious conduct, the third-party plaintiffs failed to allege facts that plausibly alleged the criminal offense of barratry.  The district court also granted the third-party defendants' motion for sanctions under Rule 11 and, on May 12, 2022, ordered ALPS to reimburse legal counsel for the third-party defendants in the total amount of $27,349.

On May 26, the district court amended its May 12 order to clarify that the award of sanctions applied to the individual attorneys—Andrews and Lawrence—in addition to ALPS.  *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").  Payment was due within 14 days.  ALPS, Andrews, and Lawrence filed interlocutory appeals from both orders, as well as motions for reconsideration and to stay payment of the sanctions award.  The district court denied the motions and, on October 25, 2022, directed entry of a final judgment on the March 1 and May 26 orders.

Under Rule 54(b), we may review an otherwise interlocutory order if the district court directs "entry of a final judgment as to one or more, but fewer than all, claims or parties" and, as here, "expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  We review the Rule 54(b) certification for abuse of discretion.  *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010).  Here, the district court's dismissal of the third-party complaint and award of sanctions under Rule 11 resolved all claims between the parties to the third-party complaint and addressed issues

6

separate from the claims involved in the underlying lawsuit. The district court also denied the defendants' motion to stay the sanctions award. We hold that the district court did not abuse its discretion in certifying the judgment under Rule 54(b) and therefore proceed to the merits of this appeal.[1]

## II.

We review the district court's decision to impose sanctions for an abuse of discretion. *See Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006). "[S]ubstantial deference" is warranted because the "district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with the case, the litigants, and the attorneys on a daily basis. Thus, assessment of frivolousness and attorneys' fees are best left to the sound discretion of the trial court after a thorough evaluation of the record and appropriate factfinding." *Blue v. United States Dep't of the Army*, 914 F.2d 525, 538 (4th Cir. 1990) (cleaned up). A district court abuses "its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Morris*, 448 F.3d at 277 (cleaned up).

Under Rule 11, attorneys and unrepresented parties have a duty to certify, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that a pleading or paper filed with a district court: (1) is not filed

---

[1] The third-party plaintiffs do not appeal the district court's dismissal of the third-party complaint under Rule 12(c) and offer no specific argument that the amount of the sanctions award was unreasonable. They argue only that no award of sanctions was appropriate.

"for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) alleges "factual contentions [that] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3). "If . . . the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[T]he primary . . . purpose of Rule 11 is to deter future litigation abuse." *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990). Other objectives "include compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." *Id.*

We discern no abuse of discretion in the district court's decision to award sanctions against ALPS and Andrews. The third-party complaint contained wholly conclusory claims—unsupported by factual allegations, unwarranted by existing law or a nonfrivolous argument for extending the law, and filed to harass, delay, and increase the costs of the already-protracted litigation. As the district court explained:

> Here, [third-party plaintiffs] filed a third-party complaint against opposing counsel that easily failed to state a claim. There was no legal or factual basis for the intentional interference with contract or civil conspiracy claims. Any suggestion that plaintiffs' counsel improperly filed suit on behalf of the homeowners or otherwise acted for their own personal gain was baseless. At the time [third-party plaintiffs] filed the third-party complaint [against plaintiffs' counsel], they knew that the Maryland Court of Appeals had ruled resoundingly in favor of the homeowners [in *Goshen Run*] by finding the Maryland Consumer Protection Act prohibited the HOAs' use of

8

confessed judgment clauses in the promissory notes. . . . Plaintiffs' counsel—far from acting for their own personal gain—were justified in challenging the illegal confessed judgment provisions in the promissory notes. Unsurprisingly, the *Goshen Run* ruling led the homeowners and HOAs to enter into settlement agreements that voided the notes. Although the voiding of the notes eliminated any benefit [third-party plaintiffs] might have received under them, [third-party plaintiffs] ha[ve] identified no facts suggesting plaintiffs' counsel acted without lawful purpose or justification by negotiating settlement agreements [with the HOAs] that voided promissory notes containing illegal enforcement provisions.

In addition, no reasonable attorney would have believed he was justified in bringing a civil conspiracy claim where the alleged underlying tortious conduct was barratry—a crime, not a tort. And, even if [third-party plaintiffs] believed they could extend the law to include such a claim, a minimal factual inquiry conducted by a reasonable attorney would have shown that plaintiffs' counsel's alleged conduct did not amount to barratry.

Finally, [third-party plaintiffs'] insistence—in the face of obvious legal and factual deficiencies—that it has a viable claim against plaintiffs' counsel compels the conclusion that [they] filed the third-party complaint for an improper purpose. When plaintiffs' counsel identified the defects in [the] complaint, [the third-party plaintiffs'] requested permission to amend to state a claim intended to invalidate the retainer agreements between [plaintiffs'] counsel and their clients. Given this conduct and the plain defects in the third-party complaint, the Court can conclude that [third-party plaintiffs'] purpose in filing the third-party complaint was to interfere with and unnecessarily delay this case and needlessly increase the cost of litigation.

J.A. 401-02.

On appeal, we need not decide whether third-party plaintiffs could reasonably have believed that criminal barratry could serve as a predicate for civil conspiracy under Maryland law, because the district court clearly did not abuse its discretion in finding that "a minimal factual inquiry conducted by a reasonable attorney would have shown that plaintiffs' counsel's alleged conduct did not amount to barratry." J.A. 402. "The thrust of the offense [of barratry] is stirring up, meddling in, or maintaining litigation in which the

9

person has no interest, for personal gain.  The officious meddling and the personal gain are separate elements, and both must be satisfied." *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 709 A.2d 112, 121 (Md. 1998); *see also Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002) ("[T]he current fundamental public policy of Maryland prohibits schemes to stir up and promote litigation for the benefit of the promoter rather than for the benefit of the real party in interest.").  The third-party complaint contained no factual allegations to support a claim that the third-party defendants violated the Rules of Professional Conduct when contacting clients, *see* Md. Code Ann., Bus. Occ. & Prof. § 10-604(3), or engaged in such "officious meddling" in connection with their investigation of third-party plaintiffs' use of the illegal CJPNs.  On the contrary, and as the district court aptly noted, "[p]laintiffs' counsel—far from acting for their own personal gain—were *justified* in challenging the illegal confessed judgment provisions in the promissory notes." J.A. at 402. (emphasis added).[2]

The intentional interference claim fares even worse.  The third-party plaintiffs asserted, with not a shred of factual allegations in support, that the third-party defendants

---

[2]  In response to the motions for judgment on the pleadings and for sanctions, the third-party plaintiffs sought to rely upon letters that the third-party defendants sent to homeowners who signed the promissory notes.  The third-party plaintiffs neglected to reference the letters in the third-party complaint or attach them to it.  Therefore, they could not properly be considered when deciding the motions.  However, as the district court also noted, the letters would not rescue the claim.  They too fail to "show that [third-party defendants] were stirring up or meddling in litigation" and "are not evidence of 'officious meddling' in litigation for personal gain." J.A. 396; *see also* Md. Attys' Rules of Pro. Resp. 19-307.3(b) (generally permitting written solicitations of prospective clients, subject to certain exceptions).

10

intimidated, coerced and forced the HOAs to agree to rescind the promissory notes to eliminate the third-party plaintiffs' rights under the notes. On the contrary, it is not surprising that, in light of the *Goshen Run* ruling, the HOAs agreed to void the CJPNs as a part of their settlement agreements with the plaintiffs.

### III.

For these reasons, we affirm the award of sanctions against ALPS and Andrews. However, we vacate and remand the district court's order as applied to Lawrence. If a district court "determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, *or party* that violated the rule *or is responsible for the violation*." Fed. R. Civ. P. 11(c)(1) (emphasis added). But the court may "not impose a monetary sanction . . . against a *represented* party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5)(A) (emphasis added). Andrews signed the third-party complaint on behalf of the third-party plaintiffs, but Lawrence had retired from the firm by that time and, therefore, was merely a "represented party." *Id.*

In its May 26 order, the district court imposed sanctions upon ALPS, Andrews, and Lawrence under Rule 11(b)(1)-(3). In an August 12 order, however, the district court clarified that the sanctions were imposed upon ALPS and Andrews for violations of Rules 11(b)(1)-(3) and upon Lawrence for violations of Rule 11(b)(1) and (b)(3). The district court did not, however, explain why Lawrence was "responsible for th[ose] violation[s]." Fed. R. Civ. P. 11(c)(1). Accordingly, we vacate and remand the sanctions order as applied to Lawrence for reconsideration and, if sanctions are reimposed, an explanation as to why they are appropriate.

11

IV.

For the foregoing reasons, we affirm the district court's orders granting Rule 11 sanctions against Lawrence Professional Services, L.L.C. and Torin Andrews.  We vacate the sanctions order against Kary Lawrence and remand for further proceedings in accordance with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*